UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:

    CROSS MEDIA MARKETING                            Chapter 11
    CORPORATION, *et al.*                                Case No. 03-13901 (BRL)
                                                                              (Jointly Administered)

                    Debtors.
------------------------------------------------------------x
JOSEPH MYERS, Unsecured Trust
Administrator of CROSS MEDIA
MARKETING CORPORATION, *et al.*                  Adv. Pro. No. 05-02215 (BRL)
                    Plaintiff,

        v.

JASON ELLSWORTH, JWE ENTERPRISES,
INC., JWE HOLDINGS INC., and J. CROSS
MARKETING, LLC,

                    Defendants
------------------------------------------------------------x


**MEMORANDUM DECISION AND ORDER DENYING
<u>DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

Defendants Jason Ellsworth ("Ellsworth"), JWE Enterprises, Inc. ("Enterprises"), JWE

Holdings, Inc. ("Holdings") (cumulatively "Ellsworth Claimants" or the "Defendants"), move for

judgment on the pleadings (the "Motion") pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure ("Civil Rules") and Rule 7012(b) of the Federal Rules of Bankruptcy Procedure

("Bankruptcy Rules"), requesting that the Court enter judgment in favor of Defendants on the

Complaint (the "Complaint") of Plaintiff Joseph Myers as Unsecured Trust Administrator (the

"Plaintiff", or the "Trust Administrator") of debtors and debtors in possession Cross Media Marketing

1

Corporation ("Cross Media") and Media Outsourcing, Inc. (collectively, the "Debtors").

**Background**

The Debtors were sellers of magazine subscriptions to end-users through direct and cross-channel marketing. Through their various marketing channels, primarily telemarketing, the Debtors sold "bundles" of several magazine subscriptions to consumers, with subscription periods ranging from one to four years. The magazine subscriptions were fulfilled by the various magazine publishers for an agreed upon price paid by the Debtors.[1]

Pursuant to an Asset Purchase Agreement dated May 27, 2002, Cross Media acquired certain assets and assumed certain liabilities of Enterprise and Holdings. As part of the asset purchase, certain leases of real property located in Montana were assigned to Cross Media. As a result, Ellsworth became the landlord for those locations. In addition, Ellsworth entered into an Employment Agreement with the Debtors dated May 27, 2002, whereby he was employed as Vice President, Dealer Sales. According to Ellsworth, on April 19, 2003, with Cross Media in substantial breach of its obligations to Ellsworth, Enterprises and Holdings under the terms of the Asset Purchase Agreement and assigned leases, Ellsworth exercised his rights under a letter agreement dated December 5, 2002, and terminated his employment under the Employment Agreement and a Non-Compete Agreement.

On June 16, 2003 (the "Petition Date"), the Debtors commenced cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). An Official Committee of Unsecured

---

[1] The Debtors had also expanded their business, through various acquisitions, to include the sale of "lifestyle" consumer products such as coins, jewelry and other collectibles as well as the sale of customer data, but have sold or terminated these businesses prior to the Petition Date.

Creditors (the "Committee") was named in the case on June 23, 2004. Ellsworth was appointed to the Committee and served as Co-Chair. On May 24, 2004, this Court entered an order (the "Confirmation Order") confirming the Debtors' Third Amended Joint Plan (the "Plan"). The general structure of the Debtors' Plan provides for the liquidation of the Debtors' accounts receivable, the sale or other disposition of the Debtors' remaining assets, and the distribution of the net proceeds of the Debtors' assets to creditors in order of their relative priority of distribution under the Bankruptcy Code or other agreements by creditors approved pursuant to the Plan. The Plan also established the Unsecured Creditor Trust to be administered for, among other things, the purpose of distributing certain proceeds and analyzing and potentially pursuing certain causes of action. See Plan, § § 5.12 - 5.14. The effective date of the Plan occurred on July 23, 2004.

The Ellsworth Claimants filed several proofs of claim against the Debtors' estates for rent, pre-petition wages and compensation, and various amounts due under the Asset Purchase Agreement. The Trust Administrator filed objections to those claims and on June 16, 2005, commenced this adversary proceeding against the Defendants under sections 547, 548, 549, and 550 of the Bankruptcy Code seeking to set aside and recover all preferential and/or fraudulent transfers by Debtors to the Defendants. The Complaint also alleges breaches of fiduciary duties by Ellsworth in so far as Ellsworth was an insider of the Debtors who improperly benefitted from his relationships with the Debtors.

The Defendants argue that Section 11.6 of the Plan released the Defendants from all of the Trust Administrator's claims asserted in the Complaint and that the claims are further barred by the doctrine of *res judicata*, by virtue of the release contained in Section 11.6 of the Plan. The Defendants also argue that the doctrine of *res judicata* further precludes the Trust Administrator's claims because

the Debtors failed to meet the minimal standards for post-confirmation claim preservation.

**Discussion**

*Judgment on the Pleadings*

Federal Rule of Civil Procedure 12(c) provides, in relevant part, that: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. The standard for granting a motion for judgment on the pleadings under Rule 12(c) is identical to that of a Rule 12(b)(6) motion for failure to state a claim. *See e.g. Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir. 2001). In both situations, the reviewing court must accept as true all factual allegations in the complaint and must view the pleadings in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Id.* A party is entitled to judgment on the pleadings only if it has established that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. *Franzos v. Pinnacle Credit Services LLC*, 332 F.Supp.2d 682, 684-685 (S.D.N.Y. 2004) 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1368, at 690 (1969). A complaint may be dismissed properly only if it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir. 1994); *George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.,* 554 F.2d 551, 553 (2d Cir. 1977), quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).


***Res judicata***

Under section 1123(b)(3) of the Bankruptcy Code, a plan of reorganization may provide for (A) the settlement or adjustment of any claim or interest belonging to the debtor or to the estate; or (B) the retention and enforcement by the debtor of any such claim or interest.  The confirmation of a plan of reorganization must be accorded res judicata effect. *See Stoll v. Gottlieb*, 305 U.S. 165, 170-71 (1938); *see also Sure-Snap Corp. v. State St. Bank and Trust Co.,* 948 F.2d 869, 872-73 (2d Cir.1991) (finding that order confirming plan of reorganization has preclusive effect under res judicata); *In re I. Appel Corp.*, 300 B.R. 564, 567 (S.D.N.Y. 2003) *aff'd*, 104 Fed.Appx. 199, 2004 WL 1496858 (2d Cir. July 1, 2004); *Semi-Tech Litig. LLC v. Bankers Trust Co.,* 272 F.Supp.2d 319 (S.D.N.Y. 2003).  "The finality interests of *res judicata* are particularly important in the bankruptcy context, where numerous contending claims and interests are gathered, jostled, and are determined and released." *In re American Preferred Prescription, Inc*. 255 F.3d 87, 94 (2d Cir. 2001).  Consequently, the confirmation of a plan of reorganization prevents the subsequent assertion of any claim not preserved in the plan as required by section 1123(b)(3).  *In re I. Appel Corp.*, 300 B.R. at 567.

The plain language of section 1123(b)(3)(B), however, does not require a plan to specify every claim; rather, section 1123(b)(3)(B) provides that the plan *may* do so. *In re Perry H. Koplik & Sons, Inc*. 2006 WL 3017346, *9 (Bankr. S.D.N.Y. 2006).  In *I. Appel*, the district court, and subsequently the Second Circuit, found a chapter 11 debtor's general reservation of rights to litigate postconfirmation claims to be satisfactory, and rejected the notion that specific causes of action had to be preserved in a plan of reorganization. *See In re I. Appel Corp.*, 300 B.R. at 569 (S.D.N.Y.2003) (Court noted that in large bankruptcies the investigation and decision to pursue every possible claim of a debtor can take

5

several years, and all relevant parties in a case have an opportunity to review and object to the plan of reorganization and disclosure statement before it is confirmed and accordingly, the court held that "[i]t is neither reasonable nor practical to expect a debtor to identify in its plan of reorganization or disclosure schedules every outstanding claim it intends to pursue with the degree of specificity that the [defendants] would require."); *see also In re Ampace Corp.,* 279 B.R.145, 158 (Bankr. D. Del. 2002) ("[T]here is nothing in [section 1123(b)(3)(B) ] to suggest that the plan must specifically identify each and every claim and/or interest belonging to the debtor that may be subject to retention and enforcement.... the confirmation process is expedited by allowing debtors to include a general reservation of their right to pursue certain causes of action at a later date." ).

Here Section 12.1 of the Plan retains jurisdiction of the Bankruptcy Court, for, among other purposes, to hear and determine all Avoidance Actions and Other Actions, related collection matters and settlements thereof. *See* Plan at § 12.1.  Section 5.12 of the Plan provides that the Unsecured Creditors Trust may pursue or abandon Avoidance Actions and Other Actions. *See* Plan at § 5.12; *see also* § 5.13 (providing for the transfer from the Debtor to the Unsecured Creditors Trust of the Other Actions and Avoidance Actions, other than any Avoidance Actions or Other Actions released pursuant to Section 11.6 of the Plan).

"Avoidance Actions" is defined under Section 1.8 of the Plan as

> Any action, adversary proceeding or contested matter that has been commenced, or action, cause of action or claim that may be commenced, under sections 510, 542, 544, 545, 547, 548, 550, 552(b) and 553 of the Bankruptcy Code or equivalent provisions of applicable non-bankruptcy law.

6

*See* Plan at § 1.8.  "Other Actions" is defined under Section 1.61 of the Plan as

> All actions, causes of action, suits or claims of the Debtors or their estates arising under any theory of law or equity, including for breach of contract, breach of fiduciary duty, negligence, tort or otherwise, with respect to the former officers and directors of the Debtors or subsidiaries of the Debtors or that may be satisfied from that certain directors & officers' insurance policy, or against prepetition professionals or agents of the Debtors (other than parties released under the Plan)."

*See* Plan at § 1.61.  Ellsworth was a former officer of the Debtors and thus, also an insider.  The Disclosure Statement also discloses that avoidance claims and other actions, including those against insiders are preserved. See Disclosure Statement, Art. IV, V. Thus, the Plan and Disclosure Statement plainly preserved Avoidance Actions and Other Actions.[2]

However, Section 11.6 of the Plan, titled "Limited Releases," provides, in pertinent part:

---

[2] In addition, section 513(e) provides that
Unless a claim, Avoidance Action or Other Action against a Creditor or other entity is expressly waived, relinquished, released, compromised, or settled in this Plan or any Final Order, the Debtors expressly reserve such claim, Avoidance Action or Other Action for later enforcement by Reorganized Cross Media or the Unsecured Trust Administrator, as appropriate (including, without limitation, claims, Avoidance Actions and Other Actions not specifically identified or of which the Debtors may be presently unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances which may change from those which the Debtors believe now to exist) and, therefore, no preclusion doctrine, including without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims, Avoidance Actions or Other Actions upon or after the confirmation or consummation of this Plan based on the Disclosure Statement, this Plan or the Confirmation Order except where such claims, Avoidance Actions or Other Actions have been expressly released in this Plan or other Final Order. In addition, each of Reorganized Cross Media and the Unsecured Trust Administrator expressly reserve the right to pursue or adopt any claims, crossclaims or counterclaims alleged in any lawsuit in which the Debtors are a defendant or an interested party against any person or entity, including without limitation the plaintiffs or co-defendants in such lawsuits, subject to the provisions of this Plan or any Final Order.

> On the Effective Date, and in consideration for the terms hereof, any and all Claims of the Debtors or the Debtors' estates, whether arising prepetition or postpetition, including Avoidance Actions and Other Actions (but excluding Claims for willful misconduct, breach of fiduciary duty that results in a personal profit at the expense of the Debtors' estates, gross negligence, intentional fraud, criminal conduct, misuse of confidential information that causes damages to the estates, and/or *ultra vires* acts) against **the following parties shall be released: the Creditors' Committee**, the Creditors' Committee's Professionals, Peter A. Furman (including in his capacity as officer and director of the Debtors), Getzler Henrich & Associates LLC, the Debtors' employees and Professionals retained by the Debtors under Bankruptcy Code Sections 327(a) and 363; and each of their respective current agents, current employees, and current representatives shall be released …

*See* Plan at § 11.6 (emphasis added). The Defendants argue that Section 11.6 released the Defendants from all of the Trust Administrator's claims asserted in the Complaint by virtue of Ellsworth's membership on the Committee, in his individual capacity and as a representative of the Ellsworth Claimants. The Trust Administrator contends however, that the Limited Releases in section 11.6 apply only to the Committee and not to its members. In the alternative, the Trust Administrator argues that even should the Limited Release apply to Ellsworth it does not apply to the other defendants and even with respect to Ellsworth, six of the eight claims[3] against the Defendants set forth in the Complaint would not have been released under Section 11.6 of the Plan.

Because of its statutory role in the Chapter 11 process, and to assure the effective representation of its constituency, an official committee such as the Creditors' Committee enjoys a qualified immunity that corresponds to, and is intended to further, the Committee's statutory duties and powers. The qualified immunity extends to conduct within the scope of the committee's statutory or

---

[3]The claims that the Trust Administrator brought against the Defendants are: (1) avoidance of preferential transfers, (2) avoidance of fraudulent transfers, (3) avoidance of post-petition transfers, (4) breach of fiduciary duty (against Ellsworth), (5) breach of contract (against Ellsworth), (6) breach of contract (against Ellsworth, Enterprises, and Holdings), (7) unjust enrichment (against Ellsworth), and (8) equitable subordination (against Ellsworth and Enterprises).

court-ordered authority. *Philip v. L.F. Rothschild Holdings (In re L.F. Rothschild Holdings),* 163 B.R. 45, 49 (S.D.N.Y.1994); *In re Drexel Burham Lambert Group, Inc.,* 138 B.R. 717, 722 (Bankr.S.D.N.Y.), *aff'd.,* 140 B.R. 347 (S.D.N.Y.1992); *Central Transp. Inc. v. Roberto (In re Tucker Freight Lines, Inc.),* 62 B.R. 213, 216, 218 (Bankr. W.D. Mich. 1986). Accordingly, courts have approved as consistent with the proper scope of liability for committees and their members provisions in Chapter 11 plans which release committees and their members from any liability to the debtor, creditors, equity security holders and other parties in interest, so long as the release does not extend to reckless or intentional misconduct.

J. Gadsen, *The Liabilities of Creditors' Committees and Their Members*, 101 COM. L.J. 13, 23 (Spring 1996) (and cases cited therein). The rationale of the courts approving such provisions has been, at least in part, that the standard of liability established in the plan provisions is no more than a restatement of the otherwise applicable standard since the exculpation was limited to the acts of the committee and its members in connection with the case and did not extend to grossly negligent activity or willful misconduct. Here, section 11.5 of the Plan, the Exculpation Provision, rather than section 11.6, grants the type of limited releases that are typically granted to creditors' committees and members, providing that

> On the Effective Date, the respective current officers, current directors, current employees, **current members**, current financial advisors, current professionals, current accountants, and current attorneys, as applicable, of the Debtors, **the Creditors' Committee,** the Agent and the Lenders, the Former Agent and Former Lenders, and the Disbursing Agents (each such party, an "*Exculpated Party*") shall be exculpated by the Debtors and the Estates and any holder of any Claim or Interest for any act or omission in connection with, or arising out of, the Chapter 11 Cases, the confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or property to be distributed under the Plan, except for willful misconduct, gross negligence, intentional fraud, criminal conduct, misuse of confidential information that causes

    damages to the estate, and/or *ultra vires* acts. Nothing in this Section 11.5 shall limit the liability of the professionals to their respective clients pursuant to DR 6-102 of the Code of Professional Responsibility.

*See* Plan at § 11.5.

    On the other hand, the Limited Releases provided in section 11.6 are much broader covering, among other things, both prepetition and postpetition conduct. While the release is broader, (and as conceded by the attorney for Ellsworth, broader than what is typically granted to Committee members), the entities it covers are more limited. Unlike section 11.5 which includes members of the Committee, 11.6 only designates the Creditors Committee, not its members. Moreover, the Limited Release in section 11.6 is not the type of release that is typically granted to Committee members which is generally limited to the acts of the committee and its members in connection with the chapter 11 proceedings. Accordingly, I find that the Limited Release of section 11.6 does not apply to Ellsworth or the other Defendants[4] and thus, the motion for judgment on the pleadings is denied.

IT IS SO ORDERED.

Dated:  New York, New York
       January 11, 2007                             /s/ Burton R. Lifland
                                                                   United States Bankruptcy Judge

---

[4] Even had Ellsworth individually been covered by the Limited Releases in Section 11.6, the other Defendants that filed separate claims based on different liabilities and that were not appointed to the Committee, would not have been released.